UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MICHAEL TULLY,

                        Plaintiff,

v.

NORTH AMERICAN POWER & GAS,
LLC,

                        Defendant.

Civil Action No. _____

Class Action Complaint

Plaintiff Michael Tully, by his attorneys, Finkelstein, Blankinship, Frei-Pearson &

Garber, LLP, Chimicles & Tikellis LLP, and Mazie Slater Katz & Freeman, LLC, as and for his

class action complaint[1], alleges, with personal knowledge as to his own actions, and upon

information and belief as to those of others, as follows:

## Nature Of This Case

1.      This action seeks to redress the deceptive pricing practices of North American

Power & Gas, LLC ("North American Power") that have caused thousands of consumers to pay

considerably more for their electricity and gas than they should otherwise have paid.

2.      North American Power engages in a classic bait-and-switch deceptive marketing

scheme aimed at consumers hoping to save on the cost of electricity or gas.  Defendant lures

---

[1] Plaintiff Michael Tully filed a similar class action complaint against North American Power on
January 8, 2015 in the District of Rhode Island.  No. 1:15-cv-00008-ML-LDA (D.R.I.).  On
March 2, 2015, Defendant filed a motion to dismiss, stay or transfer which sought to transfer the
case to this Court notwithstanding the forum selection clause favoring Rhode Island.
Consequently, on March 31, 2015, Plaintiff Tully dismissed the proposed class action without
prejudice against North American Power in the District of Rhode Island, and in the interest of
judicial economy, Plaintiff files his class action complaint in this Court, and identifies it as
related to the pending matter *Fritz v. North American Power & Gas, LLC*, No.14-cv-634-WWE
(D. Conn.).

consumers into switching to North American Power by offering a teaser rate that is lower than local utilities' rates for electricity or gas supply.  In its uniform welcome letter, North America Power represents that its customers will reap the benefit of "competitive pricing."  When the teaser rate expires after a couple of months, Defendant switches customers to a variable rate, but a rate that is "guaranteed to be below the utility's supply rate" for another couple of months.  North American Power calls this period the "Guaranteed Savings months."  Thereafter, North American Power represents its rate will be "variable," which reflects "price changes in the wholesale power market."

3.     These representations are misleading.  In fact, North American Power's electricity and gas rates are substantially higher than market prices, they are not competitive, and they do not reflect the price changes in the wholesale market.  Even during the Guaranteed Savings months period, North American Power's rates are not lower than the utility's supply rate.  After the Guaranteed Savings months expire, North American Power charges exorbitant rates that do not reflect the price changes in the wholesale power market.  As a result, consumers are being fleeced millions of dollars in exorbitant charges for electricity and gas.

4.     This suit is brought pursuant to the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1, *et seq.*, New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, Maryland Consumer Protection Act, Code Ann., Com. Law § 13-301 *et seq.*, Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*, the Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205-A *et seq.*, the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*, Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.*, Ohio Consumer Sales Practices Act, O.R.C. 1345.01 *et seq.*, Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* and Texas Deceptive Trade

Practices-Consumer Protection Act Tex Bc. Code Ann. § 17.46 *et seq*. and the common law of

Rhode Island, New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio,

Pennsylvania and Texas on bahalf of all consumers who purchased electricity or gas from North

American Power from January 6, 2005 to the present.  It seeks, *inter alia*, actual damages and

refunds, punitive damages, injunctive relief, attorneys' fees, and the costs of this suit.

## Parties

5.      Plaintiff Michael Tully is a citizen of Rhode Island residing in North Kingstown.

Mr. Tully has been a North American Power customer since February 2014 and, as a result of

Defendant's deceptive conduct, incurred excessive charges for electricity.

6.      Defendant North American Power & Gas, LLC is a limited liability company

organized under the laws of Delaware whose principal place of business is located at 20 Glover

Avenue, Suite 300, Norwalk, Connecticut, 06851.  Defendant has tens of thousands of customers

in Rhode Island, New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio,

Pennsylvania and Texas and it enjoys tens of millions of dollars in combined revenues.

## Jurisdiction

7.      Defendant's status as a limited liability company renders it an "unincorporated

association" pursuant to the Class Action Fairness Act ("CAFA"), and under CAFA, an

unincorporated association is a citizen of the state where it has its principal place of business and

the state under whose laws it is organized.  *See* 28 U.S.C. § 1332(d)(10).

8.      Jurisdiction in this civil action is authorized pursuant to 28 U.S.C. § 1332(d), as

minimal diversity exists, there are more than 100 class members, and the amount in controversy

is in excess of $5 million.

**Operative Facts**

9.      In 1997, the electric utility industry within the State of Rhode Island was restructured.  Among the goals of the reorganization were increased competition and deregulation within the industry, with an eye towards achieving greater consumer choice and an overall reduction of energy rates.  As a result, the State's electric industry is open to competition, and consumers may choose their supplier of electricity and gas.

10.      The States of New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio, Pennsylvania, and Texas similarly restructured the electric utility industry in the last 1990's.

11.      The new energy suppliers, who compete against local utilities such as National Grid, are known as Energy Services Companies, or "ESCOs."  While ESCOs supply the power, the delivery of electricity or gas to homes remains the job of the local utilities.

12.      As part of the deregulation plan, ESCOs (like North American Power) do not have to file the electricity or gas rates they charge with the Public Utilities Commission or the method by which they set their rates.

13.      However, North American Power takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge consumers exorbitant rates for electricity and gas.  In fact, North American Power's rates are substantially higher than other ESCOs or local utilities.

**North American Power Charges Deceptively High Electricity Rates**

14.      North American Power engages in a classic bait-and-switch deception scheme. North American Power lures consumers into switching to its electricity supply service by offering teaser rates that are much lower than its regular rates.

15.     Plaintiff's experience was typical.  North American Power offered Mr. Tully a rate that was slightly lower than his then-current rate and he agreed.

16.     Thereafter, North American Power sent Mr. Tully its standard "welcome letter" that informs customers that North American Power will provide "competitive pricing."  North American Power also represented that after the initial rate expires, "the rate will be a variable but guaranteed to be below the utility's supply rate to compare . . ."  Exhibit 1.  Thereafter, North American Power represented that"[t]he rate will be variable."  Id.  That welcome letter also represented that the initial rate would be $0.0749 per kilowatt hour.  When he received that letter, Plaintiff could have rescinded his decision to switch to North American Power.

17.     Defendant also provided Plaintiff and other Rhode Island customers with a "Customer Terms of Service" that states that North American Power offers variable rate plans with different pricing options.  The "Monthly Variable Rate Plan" is "a variable market based rate plan" which "may increase or decrease to reflect price changes in the wholesale power market"  Exhibit 2.   Specifically, North American Power states that its variable rate is based upon certain specified factors, including "market prices for commodity, balancing fees, North American Power fees, cost incurred by NAP to provide Supply Services through procurement in the New England Power Pool, profit, line losses plus applicable taxes."  Id.  Customers who select the "Monthly Variable Rate With Introductory Period And Guaranteed Savings" will be charged a set rate for the first month as indicated in the Welcome Letter, then during the guaranteed savings months, a rate where the customer "is guaranteed to save on the supply portion of the [c]ustomer's bill for the Guaranteed Savings months, as compared to the amount [c]ustomer would have paid of [c]ustomer had remained with the Local Utility."  Id.  North

American Power guarantees that electricity rate "will not be above the Local Utility's rate" for the introductory and guaranteed savings month.  *Id*.

18.     North American Power's representation that its variable rates reflect price changes in the wholesale power market is false and misleading.  To the contrary, there are periods of time during the class period and during the time Plaintiff was a North American Power customer in which the market price of electricity declined or remained steady while North American Power's prices rose.  North American Power does not disclose this material fact.  Nor does North American Power disclose the fact that its rates are always higher than local utilities rates after the short-term teaser rate expires.

19.     Plaintiff agreed to become North American Power's customer when North American power offered an initial rate of $0.0749 and then guaranteed savings until June 30, 2014.  Exhibit 1.  However, even during the guaranteed savings months, North American Power's rates were not lower than National Grid's rate and therefore, Plaintiff did not save on his electric bills after the initial month.

20.     From February 2014 until July 2014 (during which time Plaintiff was a North American Power customer), the price per kilowatt hour that North American Power charged went up from $0.07490 per kilowatt hour to $0.1356901 per kilowatt hour, an increase of almost 100%.  At no time during this period did North American Power charge less than $0.07490 per kilowatt hour.

21.     In contrast, the price that National Grid charged in February 2014 was $0.08372 per kilowatt hour, and it was only $0.07879 per kilowatt hour in July 2014.  At no time did National Grid charge more than $0.08372 per kilowatt hour.  In other words, while the local utility managed to lower electricity rates, North American Power's more than doubled.  In fact,

North American Power's electricity rate was at one point almost two times higher than National Grid's rate.

22.     For example, from February 18, 2014 to March 20, 2014, Plaintiff paid $29.57 for 379 KWH, or $0.0749 per KWH.  If Plaintiff had purchased his electric supply from National Grid, he would have paid $31.73, or $0.08372 per KWH.  However, from July 22, 2014 to August 18, 2014, Plaintiff paid $61.34 for 434 KWH, or $0.1356801 per KWH.  If Plaintiff had purchased his electric supply from National Grid, he would have paid $34.19, or $0.07879 per KWH.

23.     While local utilities' electricity rates may demonstrate less fluctuation over that of the wholesale market, over time, the rates utilities like National Grid charge are an accurate reflection of rates that are based on prevailing market conditions.  In other words, the electricity rates that utilities charge are an accurate measure of what market based rates should be.  That North American Power's rates were always substantially higher than National Grid's rates therefore demonstrates that North American Power's rates are not in fact based on prevailing market conditions.

24.     A reasonable consumer would understand that the price the local utility or other ESCO charges is part of prevailing market conditions and that a price based on prevailing market conditions would be consistent with the price charged by the local utility or other ESCOs.  However, North American Power's prices are substantially higher than local utilities' rates as well as the rates other ESCOs charge.

25.     All that North American Power offers customers is electricity delivered by local utilities, a commodity that has the exact same qualities as electricity supplied by other ESCOs or

local utilities.  Other than potential price savings, North American Power offers nothing of value that other ESCO or local utilities do not offer.

26.     The following table, which includes the monthly electricity rates charged by North American Power to Plaintiff, the rates that would have been charged by National Grid, the applicable monthly weighted average prices from the Intercontinental Exchange data (the "ICE" is a proper measure of wholesale prices) and the day-ahead Locational Marginal Prices for Rhode Island demonstrates that North American Power's rates are not based on price changes in the market price of electricity:

| Billing Period | North American Power Per KWH | National Grid Per KWH | Intercontinental Exchange (ICE) Data on Weighted Average Prices | Day-Ahead Locational Marginal Price (LMP) |
|---|---|---|---|---|
| 2/18/14-3/20/14 | $0.07490 | $0.08372 | $0.16679 | $0.15470 |
| 3/20/14-4/21/14 | $0.08790 | $0.08682 | $0.05523 | $0.05308 |
| 4/21/14-5/20/14 | $0.08790 | $0.08682 | $0.04639 | $0.04222 |
| 5/20/14-6/19/14 | $0.08790 | $0.08682 | $0.04485 | $0.03745 |
| 6/19/14-7/22/14 | $0.10990 | $0.07879 | $0.04722 | $0.04078 |
| 7/22/14-8/18/14 | $0.1356901 | $0.07879 | $0.03673 | $0.03310 |
| 8/18/14-9/17/14 | $0.12990 | $0.07879 | $0.04040 | $0.03600 |

27.     Based on the data in this table, the following chart graphically demonstrates the disconnect between North American Power's rates, National Grid's electricity rates, and wholesale market prices:



28.     Thus, North American Power's statements with respect to the electric rates it will charge are materially misleading because customers do not receive a market based price or a rate that reflects the market pricing of electricity.  Instead, consumers are charged non-competitive rates that are substantially higher.  North American Power fails to disclose this material fact to its customers.

29.     North American Power's statements regarding its electricity rates are materially misleading, as the most important consideration for any reasonable consumer when choosing an energy supplier is price.  No reasonable consumer who knows the truth about North American Power's exorbitant rates would choose North American Power as an electricity supplier.  Other than potential price savings, there is nothing to differentiate North American Power from other

ESCOs or local utilities, and the potential for price savings is the only reason any reasonable consumer would enter into a contract for electricity supply with North American Power.

30.     In addition to the market price of electricity, North American power represents that its electricity rate is based on "balancing fees, North American Power fees, cost incurred by NAP to provide Supply Services through procurement in the New England Power Pool, profit, line losses plus applicable taxes."  However, these factors do not account for the drastic increase in rates charged to Plaintiff and the other members of the Class.

31.     North American Power intentionally makes these misleading statements regarding its electric rates so that reasonable consumers like Plaintiff will rely upon its statements and switch their electric supplier to North American Power.

### Class Action Allegations

32.     Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of all Rhode Island, New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio, Pennsylvania and Texas State residents who were North American Power customers from January 6, 2005 to the present.

33.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant.

34.     This action is brought as a class action for the following reasons:

        a.     The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.      There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.      whether Defendant violated the consumer protection laws of various states of which the Class member is a resident;

ii.      whether Defendant breached its contract with consumers by charging a rate higher than that provided for in the agreement;

iii.      whether Defendant breached the implied covenant of good faith and fair dealing by charging electricity or gas rates which were not market based;

iv.      whether Defendant is being unjustly enriched by deceptively charging rates substantially over those available in the market;

v.      whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

vi.      whether Defendant should be enjoined from continuing to charge exorbitant rates based on undisclosed factors;

c.      The claims asserted by Plaintiff are typical of the claims of the members of the Class;

d.      Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

e.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

f.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

iii.      When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

iv.      A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense and ensure uniformity of decisions;

v.      The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

vi.      Defendant has acted on grounds generally applicable to Class members, making class-wide monetary relief appropriate.

35.      Defendant's violations of Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1, *et seq*., New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.,  Maryland Consumer Protection Act, Code Ann., Com. Law § 13-301 *et seq*., Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*., the Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205-A *et seq*., the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1 *et seq*., Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq*., Ohio

Consumer Sales Practices Act, O.R.C. 1345.01 *et seq*., Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. and Texas Deceptive Trade Practices-Consumer Protection Act Tex Bc. Code Ann. § 17.46 *et seq* and the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

## FIRST CAUSE OF ACTION
### (Violation of R.I. Gen. Laws § 6-13.1, *et seq.*)

36.     Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

37.     The Rhode Island Deceptive Trade Practices Act provides, *inter alia*:

> Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action under Rules of Civil Procedure in the superior court of the county in which the seller or lessor resides, is found, has his or her principal place of business, or is doing business or in the superior court of the county as is otherwise provided by law, to recover actual damages or two hundred dollars ($200), whichever is greater.

R.I. Gen. Laws § 6-13.1-5.2.  R.I. Gen. Laws § 6-13.1-5.2 declares unfair or deceptive acts or practices unlawful.

38.     Defendant's misrepresentations and false, deceptive, and misleading statements with respect to the rates it charges for electricity and gas, as described above, constitute unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Rhode Island Deceptive Trade Practices Act.

39.     Defendant's misrepresentations and false, deceptive, and misleading statements would have been material to any potential consumer's decision to purchase electricity or gas from North American Power.

40.     Defendant also failed to inform customers that its rates are substantially higher

than those based on the market price of electricity or gas.  That information would have been material to any consumer deciding whether to purchase electricity or gas from North American Power.

41.     Plaintiff and the other members of the Class entered into agreements to purchase electricity or gas from North American Power for personal, family or household use and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of Rhode Island Deceptive Practices Act.

42.     As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had North American Power charged a rate based on the market price of energy or had they not switched to North American Power from their previous supplier.

43.     Plaintiff and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have entered into an agreement to purchase electricity or gas from North American Power if the true facts concerning its rates had been known.

44.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for actual damages or two hundred dollars ($200), whichever is greater; punitive damages; injunctive relief, attorneys' fees, and the costs of this suit.

45.     Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff and the other members of the Class.  Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Violation of Other State Consumer Protection Laws)**

46.     Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

47.     The consumer protection laws of New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio, Pennsylvania and Texas declare unfair or deceptive acts or practices unlawful.

48.     Defendant's misrepresentations and false, deceptive, and misleading statements with respect to the rates it charges for electricity and gas, as described above, constitute unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.,  Maryland Code Ann., Com. Law § 13-301 *et seq*., Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*., the Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205-A *et seq*., the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:1 *et seq*., Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq*., Ohio Consumer Sales Practices Act, O.R.C. 1345.01 *et seq*., Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. and Texas Deceptive Trade Practices-Consumer Protection Act Tex Bc. Code Ann. § 17.46 *et seq*.

49.     Defendant's misrepresentations and false, deceptive, and misleading statements would have been material to any potential consumer's decision to purchase electricity or gas from North American Power.

50.     Defendant also failed to inform customers that its rates are substantially higher than those based on the market price of electricity or gas.  That information would have been material to any consumer deciding whether to purchase electricity or gas from North American Power.

51.     Members of the Class entered into agreements to purchase electricity or gas from

North American Power for personal, family or household use and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of various state consumer protection laws.

52.     As a consequence of Defendant's wrongful actions, members of the Class suffered an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had North American Power charged a rate based on the market price of energy or had they not switched to North American Power from their previous supplier.

53.     Members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have entered into an agreement to purchase electricity or gas from North American Power if the true facts concerning its rates had been known.

54.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for actual damages or damages pursuant to the state law, whichever is greater; punitive damages; injunctive relief, attorneys' fees, and the costs of this suit.

55.     Defendant's conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of the members of the Class.  Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Breach of Contract)

56.     Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

57.     Plaintiff and the Class entered into valid contracts with North American Power for

the provision of electricity or gas supply.

58.     Under the contract, North American Power promised to charge a rate for electricity that is based on the "wholesale power market" and "market prices for commodity, balancing fees, North American Power fees, cost incurred by NAP to provide Supply Services through procurement in the New England Power Pool, profit, line losses plus applicable taxes." North American Power made similar promises with respect to its gas rates.

59.     Under the contract, North American Power also "guaranteed [that it's rates would] be below the utility's supply rate" during the period it refers to as the "Guaranteed Savings months."

60.     Pursuant to the contract, Plaintiff and the Class agreed to these terms and to pay that rate, and they did so.

61.     However, North American Power failed to perform its obligations under the contract because it charged a rate for electricity or gas that was not below the utility's supply rate during the "Guaranteed Savings months," and was also not based on the factors upon which the parties agreed the rate would be based.

62.     The electricity and gas rates, and the grounds on which North American Power could purportedly exercise its discretion to charge a variable rate, were material terms of the contract.

63.     Plaintiff and the Class were damaged as a result because they were billed, and they paid, a charge for electricity or gas that was higher than it would have been had North American Power based its rate on the agreed upon factors.

64.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the

amount of such damages to be determined at trial, plus attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

65.     Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

66.     Every contract in Rhode Island, New Jersey, Maryland, Connecticut, Maine, New Hampshire, Georgia, Ohio, Pennsylvania and Texas contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

67.     Implied in the terms of the contract was a covenant of good faith and fair dealing. This implied covenant prevents North American Power from engaging in conduct, and exercising its discretion, in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the consumers.

68.     North American Power breached the implied covenant of good faith and fair dealing by charging Plaintiff and other members of the Class exorbitant electricity or gas rates. Under the terms of the contract, North American Power had the discretion to charge Plaintiff and the members of the class for electricity based on a "variable market price" comprised of specified factors, "including but not limited to market prices for commodity, balancing fees, North American Power fees, cost incurred by NAP to provide Supply Services through procurement in the New England Power Pool, profit, line losses plus applicable taxes."   North American Power makes similar representation with respect to its gas rates.  North American Power's failure to exercise its discretion in good faith is evidenced by the electricity or gas rates North American Power charged Plaintiff and other members of the Class which were not market based but were instead outrageously high and contrary to the reasonable expectations of the parties.  North American Power charged electricity or gas rates in bad faith, unreasonably and in

{00270579 }                                          18

a manner inconsistent with the reasonable expectations of Plaintiff and other members of the

Class.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

69.    Plaintiff repeats and re-alleges the allegations above as if fully set forth herein.

70.    By engaging in the conduct described above, Defendant has unjustly enriched

itself and received a benefit at the expense of Plaintiff and the other members of the Class.

Defendant appreciated the benefit and it would be inequitable for Defendant to retain such

benefit without being required to compensate Plaintiff and other members of the Class for the

damages that they have suffered as a result of Defendant's actions.

71.    It would be unjust and inequitable for Defendant to retain the payments Plaintiff

and the Class made for excessive charges.

72.    By reason of the foregoing, Defendant is liable to Plaintiff and the other members

of the Class for the damages that they have suffered as a result of Defendant's actions, the

amount of such damages to be determined at trial, plus attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment

against Defendant as follows:

1.    Certifying this action as a class action, with a class as defined above;

2.    On Plaintiff's First Cause of Action, awarding against Defendant for actual

damages that Plaintiff and the other members of the Class have suffered or two hundred dollars

($200), whichever is greater;

3.    On Plaintiff's Second Cause of Action, awarding against Defendant for actual

damages that Plaintiff and the other members of the Class have suffered or the minimum amount

provided under the state law, whichever is greater;

4.      On Plaintiff's Third Cause of Action, awarding against Defendant damages that Plaintiff and other members of the Class have suffered as a result of Defendant's actions;

5.      On Plaintiff's Fourth Cause of Action, awarding against Defendant's damages that Plaintiff and the other members of the Class have suffered;

6.      On Plaintiff's Fifth Cause of Action, awarding against Defendant's damages that Plaintiff and the other members of the Class have suffered;

7.      Awarding Plaintiff and the Class punitive damages and injunctive relief;

8.      Awarding Plaintiff and the Class interest, costs and attorneys' fees; and

9.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated:      March 31, 2015
            White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By:      <u>/s/ D. Greg Blankinship</u>
         D. Greg Blankinship (CT28627)
         1311 Mamaroneck Avenue
         White Plains, New York 10605
         Tel: (914) 298-3281
         Fax: (914) 824-1561
         gblankinship@fbfglaw.com

**CHIMICLES & TIKELLIS LLP**
Matthew D. Schelkopf (*pro hac vice* forthcoming)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
mds@chimicles.com

{00270579 }                                          20

**MAZIE SLATER KATZ &
FREEMAN, LLC**
Matthew R. Mendelsohn (*pro hac vice*
forthcoming)
103 Eisenhower Parkway
Roseland, NJ 07068
mmendelsohn@mskf.net

*Attorneys for Plaintiff and the putative class*